UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LYNNETTE TATUM-RIOS, Individually and on behalf of all other persons similarly situated,<br><br>            Plaintiff,<br><br>    v.<br><br>BEAUTY FX SPA INC., and BF TOWNHOUSE LLC d/b/a BEAUTYFIX<br><br>            Defendants. | ECF CASE<br><br>No.: _____<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

1.      Plaintiff Lynnette Tatum-Rios, who is legally blind, brings this civil rights action against Defendants Beauty FX Spa Inc., and BF Townhouse LLC d/b/a BeautyFix ("Defendants") for their failure to design, construct, maintain, and operate their website, https://www.beautyfixmedspa.com/ (the "Website"), to be fully accessible to and independently usable by Plaintiff Tatum-Rios and other blind or visually-impaired people. Defendants deny full and equal access to their Website.

2.      Plaintiff Tatum-Rios, individually and on behalf of others similarly situated, asserts claims under the Americans With Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL") against Defendants.

3.      Plaintiff Tatum-Rios seeks a permanent injunction to cause Defendants to change their corporate policies, practices, and procedures so that their Website will become and remain accessible to blind and visually-impaired consumers.

THE PARTIES

4.      Plaintiff Tatum-Rios is, at all relevant times, a resident of New York, New York County. As a blind, visually-impaired handicapped person, she is a member of a protected class of individuals under Title III of the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., the NYSHRL and NYCHRL.

5.      Upon information and belief, Defendant Beauty FX Spa Inc is at all relevant times a domestic business corporation that is organized under New York law and is authorized to do business in the State of New York.

6.      Upon information and belief, Defendant BF Townhouse LLC is at all relevant times a domestic limited liability company that is organized under New York law and is authorized to do business in the State of New York.

JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff Tatum-Rios' claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq*., and 28 U.S.C. § 1332.

8.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff Tatum-Rios' NYSHRL, N.Y. Exec. Law Article 15, and NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq.*, claims.

9.      Venue is proper in this District under 28 U.S.C. §1391(b)(1) and (2) because Plaintiff Tatum-Rios resides in this District, and Defendants conduct and continue to conduct a substantial and significant amount of business in this District.

10.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

<u>NATURE OF ACTION</u>

11.     The COVID-19 pandemic has shifted the world into an almost entirely online model.  Restaurants need a website for customers to place pick-up and delivery orders.  Entertainment venues are delivering performances to audiences via their Websites or other online streaming services.  Our educational institutions, including private schools and Universities have shifted to a virtual classroom with distance-learning being the new normal.  Furthermore, with store closures or capacity limitations, stores are relying on their Websites to serve as the fundamental point of contact between their business and consumers.  In order for blind and visually impaired consumers to access these Websites, they must use screen reading software.

12.     Blind and visually impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Job Access With Speech ("JAWS") is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer.

13.     For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually impaired user is unable to access the same content available to sighted users.

14.    The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 Levels A and AA of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible.

15.    For a website to be equally accessible to a blind or visually impaired person, under these guidelines, it should have following:

a.    Alternative text ("alt-text") or text equivalent for every non-text element. Alt-text is an invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that screen-reading software can speak the alt-text where a sighted user sees pictures, which includes captcha prompts. Alt-text does not change the visual presentation, but instead a text box shows when the mouse moves over the picture. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics, depriving that person from knowing what is on the website.

b.    Videos have audio description.

c.    Title frames with text are provided. Absent these titles, navigating a website is particularly difficult.

d.    Webpage headings are properly labeled with the topic or purpose of the webpage, versus being blank. Screen readers read out page headings, allowing users to quickly skip to a section. Navigation is, however, very difficult without those headings.

     e.      Equivalent text is provided when using scripts.

     f.      Forms may be completed with the same information and functionality as for sighted persons. Absent forms being properly labeled, it is difficult for a visually impaired or blind individual to complete the forms, as they do not know what the fields, how to input data, or what options to select (e.g., selecting a date or a size). A compliant website will, instead, provide labels or instructions when content requires user input. This includes captcha prompts, requiring the user to verity that she or she is not a robot.

     g.      Information about the meaning and structure of content is conveyed by more than the visual presentation of content.

     h.      Web pages do not share the same ID or title. When two or more elements on a web page share the same ID or title, it causes problems in screen readers which use IDs for labeling controls and table headings.

     i.      Linked images must contain alt-text explaining the image. Absent that alt-text, a screen reader has no content to present the user as to what the image is.

     j.      The purpose of each link is easily determined from how the link is labeled. Absent properly labeling each link or when no description exists, it confuses keyboard and screen-reader users as they do not know the purpose of the links. This includes captcha prompts.

     k.      No redundant links where adjacent links go to the same URL address. When redundant links exist, it causes additional navigation and repetition for keyboard and screen-reader users.

l.     Portable Document Formats (PDFs) are accessible. When they are inaccessible, the visually impaired or blind individual cannot learn what information is on them.

m.     One or more keyboard operable user interface has a mode of operation where the keyboard focus indicator is discernible.

n.     Changing the setting of a user interface component does not automatically cause a change of content where the user has not been advised before using the component.

o.     The name and role of all user interface elements can be programmatically determined; items that can be set by the user can be programmatically set; and/or notification of changes to these items are available to user agents, including assistive technology.

<u>STATEMENT OF FACTS</u>

<u>Defendants, Their Website And Their Website's Barriers</u>

16.     Defendants are a medical spa that specialize in eye, neck, body, and skincare treatments. Defendants operate three New York locations. Through the Website, customers can schedule in-person consultations at Defendants' three New York locations or virtual consultations for their treatments, including facials, Botox treatments, laser hair removal, skin resurfacing, intravenous therapy, and much more. Customers can also purchase non-surgical products and a membership.

17.     Defendants own and operate three New York locations. Defendants' New York flagship store is located at 18 West 23rd Street, 2nd Floor, New York, New York.

Defendants' other two locations are located at 201 E 69th St #2C, New York, New York, and 1885 Palmer Avenue, Larchmont, New York.

18.    The Website is a commercial marketplace. Customers can book in-person consultations for Defendants' treatments at their New York locations. Through the Website, customers can learn about Defendants' treatments, non-surgical products, and membership, schedule in-person and virtual consultations for Defendants' treatments, get address information for Defendants' locations, look at reviews, learn about Defendants' medical staff, sign up for Defendants' newsletter, and get answers to frequently asked questions. It is also where potential customers can learn about Defendants' company, their mission, and their privacy policy.

19.    It is, upon information and belief, Defendants' policy and practice to deny Plaintiff Tatum-Rios and other blind or visually-impaired users access to their Website, thereby denying the facilities and services that are offered and integrated with their online retail operations. Due to its failure and refusal to remove access barriers to their Website, Plaintiff Tatum-Rios and visually-impaired persons have been and are still being denied equal access to Defendants' online retail operations and the numerous facilities, goods, services, and benefits offered to the public through their Website.

20.    Plaintiff Tatum-Rios cannot use a computer without the assistance of screen-reading software. She is, however, a proficient screen-reader user and uses it to access the Internet. She has visited the Website on separate occasions using screen-reading software.

21.    During her visits to the Website, the last occurring on or about September 24, 2021, Plaintiff Tatum-Rios encountered multiple access barriers that denied her the

full enjoyment of the facilities, goods, and services of the Website, as well as to the goods, and services of Defendants' online retail operations. Because of these barriers, she was unable to, substantially equal to sighted individuals:

a.    Know what is on the Website. This is in part due to the non-text images lacking proper alternative text. For example, on the homepage, most of the images are not detected by the screen reader. These images are labeled as "link graphics" and Plaintiff Tatum-Rios is unaware what the images are depicting. Furthermore, the four headings, "Shop Fixes," "Learn," "Membership," and "Free Consultation" on the homepage are not detected by the screen reader and therefore inaccessible to Plaintiff Tatum-Rios. Additionally, the shopping cart logo is not labeled as "clickable" and Plaintiff Tatum-Rios needed sighted assistance to learn that she can access her cart by clicking the shopping cart logo.

b.    Navigate the Website. Plaintiff Tatum-Rios had difficulty navigating this Website. As mentioned above, links and images are not properly labeled. For example, on the frequently asked questions page, the questions are not labeled as "clickable" and Plaintiff Tatum-Rios needed sighted assistance to learn that the questions were clickable. Upon selecting a question, the question expands, and a sighted user gets to read the answer. However, when Plaintiff Tatum-Rios clicked on a question, the question did not expand and therefore she was unable to access answers to frequently asked questions. Also, when Plaintiff Tatum-Rios clicked on the "Add to Cart" link to purchase the LipFix: Filler, there is no use of ARIA informing Plaintiff Tatum-Rios that she successfully added the item to her cart. When a sighted user adds an item to their cart, a shopping cart menu pops up that allows the sighted user to adjust the quantity and

proceed with the checkout process. However, this shopping cart menu was not detected by the screen reader. Even when Plaintiff Tatum-Rios searched for "shopping cart" she was not able to access her shopping cart and proceed with the checkout process. Plaintiff Tatum-Rios was also unable to schedule an in-person consultation. When accessing the consultations page, Plaintiff Tatum-Rios was only allowed to enter her name and email address because the screen reader focus was thrown to the bottom of the page. As a result, Plaintiff Tatum-Rios was unable to schedule an in-person consultation at any of Defendants' New York locations.

22.     Plaintiff Tatum-Rios was denied full and equal access to the facilities and services Defendants offer to the public on their Website because she encountered multiple accessibility barriers that visually-impaired people often encounter with non-compliant Websites:

    a.     Images are not properly labeled.

    b.     Elements are not properly labeled.

    c.     Forms have fields without label elements or title attributes.

    d.     Label elements are not attached to the controls they label.

    e.     Links use general text with no surrounding text explaining the link purpose.

    f.     Frames do not have a title.

    g.     Tables are not properly labeled with row and column headers.

    h.     Button elements are empty and have no programmatically determined name.

        i.      Form controls have no label and no programmatically determined name.

        j.      Several links on a page share the same link text but go to different destinations.

        k.      Radio button groups are not contained in a fieldset element.

        l.      Headings are not nested correctly and are empty.

<u>Defendants Must Remove Barriers to their Website</u>

23.     Due to the inaccessibility of their Website, blind and visually-impaired customers such as Plaintiff Tatum-Rios, who need screen-readers, cannot fully and equally use or enjoy the facilities, goods, and services Defendants offer to the public on their Website. The Website's access barriers that Plaintiff Tatum-Rios encountered have caused a denial of her full and equal access in the past, and now deter her on a regular basis from accessing the Website. These access barriers have likewise deterred her from visiting Defendants' Website and taking advantage of their online retail operations and enjoying it equal to sighted individuals.

24.     If the Website was equally accessible to all, Plaintiff Tatum-Rios could independently navigate it, learn about Defendants' products, get recommendations and complete a purchase, as sighted users can.

25.     Through her attempts to use the Website, Plaintiff Tatum-Rios has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

26.     Because simple compliance with the WCAG 2.1 Guidelines would provide Plaintiff Tatum-Rios and other visually-impaired consumers with equal access to

the Website, Plaintiff Tatum-Rios alleges that Defendants have engaged in acts of intentional discrimination, including, but not limited to, the following policies or practices:

      a.    Constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiff Tatum-Rios;

      b.    Failing to construct and maintain a website that is sufficiently intuitive to be equally accessible to visually-impaired individuals, including Plaintiff Tatum-Rios; and,

      c.    Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually impaired consumers, such as Plaintiff Tatum-Rios, as a member of a protected class.

27.    Defendants therefore use standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

28.    Title III of the ADA expressly contemplates the injunctive relief that Plaintiff Tatum-Rios seeks under 42 U.S.C. § 12188(a)(2).

29.    Because their Website has never been equally accessible, and because Defendants lack a corporate policy that is reasonably calculated to cause their Website to become and remain accessible, Plaintiff Tatum-Rios seeks a permanent injunction under 42 U.S.C. § 12188(a)(2) requiring Defendants to retain a qualified consultant acceptable to Plaintiff Tatum-Rios to assist Defendants to comply with WCAG 2.1 guidelines for their Website:

      a.    Remediating the Website to be WCAG 2.1 compliant;

b.      Training Defendants' employees and agents who develop the Website on accessibility compliance under the WCAG 2.1 guidelines;

c.      Regularly checking the accessibility of the Website under the WCAG 2.1 guidelines;

d.      Regularly testing user accessibility by blind or vision-impaired persons to ensure that Defendants' Website complies under the WCAG 2.1 guidelines; and,

e.      Developing an accessibility policy that is clearly disclosed on Defendants' Website, with contact information for users to report accessibility-related problems.

30.     Although Defendants may currently have centralized policies on maintaining and operating their Website, Defendants lack a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually impaired consumers.

31.     Without injunctive relief, Plaintiff Tatum-Rios and other visually impaired consumers will continue to be unable to independently use the Website, violating its rights.

32.     Defendants have, upon information and belief, invested substantial sums in developing and maintaining their Website and has generated significant revenue from the Website. These amounts are far greater than the associated cost of making their Website equally accessible to visually impaired customers.

33.     Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff Tatum-Rios seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendants' Website and as a result have been denied access to Defendants' Website and their online retail operations during the relevant statutory period ("Class Members").

35.     Plaintiff Tatum-Rios seeks to certify a State of New York subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the State of New York who have attempted to access the Website and as a result have been denied access to Defendants' Website and their online retail operations during the relevant statutory period ("New York Subclass Members").

36.     Plaintiff Tatum-Rios seeks to certify a New York City subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York who have attempted to access the Website and as a result have been denied access to Defendants' Website and their online retail operations during the relevant statutory period ("New York City Subclass Members").

37.     Common questions of law and fact exist amongst the Class Members, New York Subclass Members and New York City Subclass Members:

    a.     Whether Defendants' Website is a place of "public accommodation";

    b.     Whether Defendants' Website is a "commercial marketplace";

    c.     Whether the Website is a "public accommodation" or a service or good "of a place of public accommodation" under Title III of the ADA;

d.      Whether the Website is a "place or provider of public accommodation" or an "accommodation, advantage, facility or privilege" under the NYSHRL or NYCHRL;

e.      Whether the Website denies the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating Title III of the ADA; and

f.      Whether the Website denies the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYSHRL or NYCHRL.

38.     Plaintiff Tatum-Rios' claims are typical of the Class Members, New York Subclass Members and New York City Subclass Members: they are all severely visually impaired or otherwise blind, and claim that Defendants have violated Title III of the ADA, NYSHRL or NYCHRL by failing to update or remove access barriers on their Website so it can be independently accessible to the visually impaired individuals.

39.     Plaintiff Tatum-Rios will fairly and adequately represent and protect the Class and Subclasses' interests because she has retained and is represented by counsel competent and experienced in complex class action litigation, and because she has no interests antagonistic to the Class or Subclasses. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class and Subclasses, making appropriate both declaratory and injunctive relief with respect to Plaintiff, the Class and Subclasses.

40.     Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class and Subclass Members

predominate over questions affecting only individuals, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

41.    Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

FIRST CAUSE OF ACTION
VIOLATIONS OF THE ADA, 42 U.S.C. § 12181 *et seq.*

42.    Plaintiff Tatum-Rios, individually and on behalf of the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

43.    Title III of the ADA prohibits "discriminat[ion] on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

44.    Defendants' Website is a commercial marketplace and a public accommodation under Title III of the ADA, 42 U.S.C. § 12181(7). Their Website is a service, privilege, or advantage of Defendants' online retail operations. The Website is a service that is integrated with Defendants' online retail operations.

45.    Under Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

46.    Under Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

47.    Under Title III of the ADA, unlawful discrimination also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

48.    These acts violate Title III of the ADA, and the regulations promulgated thereunder. Plaintiff Tatum-Rios, who is a member of a protected class of persons under Title III of the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, she has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons.

49.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff Tatum-Rios requests the relief as set forth below.

SECOND CAUSE OF ACTION
VIOLATIONS OF THE NYSHRL

50.     Plaintiff Tatum-Rios, individually and on behalf of the New York

Subclass Members, repeats and realleges every allegation of the preceding paragraphs as

if fully set forth herein.

51.     Defendants' Website is a commercial marketplace and constitutes a sales

establishment and public accommodation under N.Y. Exec. Law § 292(9). Defendants'

Website is a service, privilege or advantage of Defendants' online retail operations.

Defendants' Website is a service that is by and integrated with their online retail

operations.

52.     Defendants are subject to NYSHRL because they own and operate their

Website, which is marketed to consumers located in the State of New York. Defendants

are a "person" under N.Y. Exec. Law § 292(1).

53.     Defendants are violating the NYSHRL in refusing to update or remove

access barriers to their Website, causing their Website and the services integrated with

their online retail operations to be completely inaccessible to the blind. This

inaccessibility denies blind patrons full and equal access to the facilities, goods and

services that Defendants make available to the non-disabled public. N.Y. Exec. Law §§

296(2)(a), 296(2)(c)(i), 296(2)(c)(ii)

54.     Readily available, well-established guidelines exist on the Internet for

making websites accessible to the blind and visually impaired. These guidelines have

been followed by other large business entities and government agencies in making their

websites accessible, including but not limited to: adding alt-text to graphics and ensuring

that all functions can be performed using a keyboard. Incorporating the basic components

to make their Website accessible would neither fundamentally alter the nature of their business nor result in an undue burden to them.

55.     Defendants' actions constitute willful intentional discrimination against the class because of a disability, violating the NYSHRL, N.Y. Exec. Law § 296(2), in that Defendants have:

a.     Constructed and maintained a website that is inaccessible to Class Members with knowledge of the discrimination; and/or

b.     Constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c.     Failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

56.     Defendants discriminate, and will continue in the future to discriminate against Plaintiff Tatum-Rios and New York Subclass Members on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Defendants' Website and their online retail operations under § 296(2) *et seq.* and/or their implementing regulations. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiff and the New York Subclass Members will continue to suffer irreparable harm.

57.     As Defendants' actions violate the NYSHRL, Plaintiff Tatum-Rios seeks injunctive relief to remedy the discrimination, compensatory damages, civil penalties and fines under N.Y. Exec. Law § 297(4)(c) *et seq.* for every offense, and reasonable attorneys' fees and costs.

THIRD CAUSE OF ACTION
VIOLATIONS OF THE NYCHRL

58.    Plaintiff Tatum-Rios, individually and on behalf the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

59.    Defendants' Website is a commercial marketplace and constitutes a sales establishments and public accommodations under NYCHRL, N.Y.C. Admin. Code § 8-102(9), and their Website is a service that is integrated with their online retail operations.

60.    Defendants are subject to NYCHRL because they own and operate their Website, and their online retail operations, which is marketed to consumers located in the City of New York, making them a person under N.Y.C. Admin. Code § 8-102(1).

61.    Defendants are violating the NYCHRL in refusing to update or remove access barriers to their Website, causing their Website and the services integrated with their online retail operations to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that Defendants make available to the non-disabled public. N.Y.C. Admin. Code §§ 8-107(4)(a), 8-107(15)(a).

62.    Defendants' actions constitute willful intentional discrimination against the Subclass because of a disability, violating the NYCHRL, N.Y.C. Admin. Code § 8-107(4)(a) and § 8-107(15)(a,) in that they have:

    a.    Constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

    b.    Constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c.     Failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

63.     As such, Defendants discriminate, and will continue in the future to discriminate against Plaintiff Tatum-Rios and the New York City Subclass Members because of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of their Website and their online retail operations under § 8-107(4)(a) and/or their implementing regulations. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiff and the New York City Subclass will continue to suffer irreparable harm.

64.     As Defendants' actions violate the NYCHRL, Plaintiff Tatum-Rios seeks injunctive relief to remedy the discrimination, compensatory damages, civil penalties and fines for each offense, and reasonable attorneys' fees and costs. N.Y.C. Admin. Code §§ 8-120(8), 8-126(a).

FOURTH CAUSE OF ACTION<br/>DECLARATORY RELIEF

65.     Plaintiff Tatum-Rios, individually and on behalf the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

66.     An actual controversy has arisen and now exists between the parties in that Plaintiff Tatum-Rios contends, and is informed and believes that Defendants deny, that their Website contains access barriers denying blind customers the full and equal access to the goods, services and facilities of their Website and by extension their online retail operations, which Defendants own, operate and control, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42

U.S.C. §§ 12182, *et seq.*, N.Y. Exec. La § 296, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.* prohibiting discrimination against the blind.

67.    A judicial declaration is necessary and appropriate now in order that each of the parties may know their respective rights and duties and act accordingly.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff Tatum-Rios respectfully requests this Court grant the following relief:

a.    A preliminary and permanent injunction to prohibit Defendants from violating Title III of the ADA, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Admin. Code § 8-107, *et seq*., and the laws of New York;

b.    A preliminary and permanent injunction requiring Defendants to take all the steps necessary to make their Website into full compliance with the requirements set forth in Title III of the ADA, and their implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.    A declaration that Defendants own, maintain and/or operate the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by ADA, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq*., N.Y.C. Admin. Code § 8-107, *et seq*., and the laws of New York

d.    An order certifying the Class and Subclasses under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and her attorneys as Class Counsel;

e.    Compensatory damages in an amount to be determined by proof, including all applicable statutory damages, punitive damages and fines;

f.      Pre- and post-judgment interest;

g.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.      Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Tatum-Rios demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
        October 28, 2021

LIPSKY LOWE LLP


s/ Douglas B. Lipsky
Douglas B. Lipsky
Christopher H. Lowe
420 Lexington Avenue, Suite 1830
New York, New York 10017-6705
212.392.4772
doug@lipskylowe.com
chris@lipskylowe.com